IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: ) | Case No. 02 B 49675 |
| ) | Adv. No. 04 A 04748 |
| Conseco Finance Corp., ) | |
| ) | Chapter 11 |
| Debtor. ) | |
| ) | Hon. Carol A. Doyle |
| ) | |
| The Plan Administrator, on behalf of ) | |
| the Post-Consummation Estate of the ) | |
| Finance Company Debtors, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 1:05 CV 02034 |
| v. ) | Hon. Mark Filip |
| ) | |
| Lone Star RV Sales, Inc., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

On October 11, 2004, the Plan Administrator (the "Plan Administrator"), on behalf of the Post-Consummation Estate (the "CFC Estate") of the Finance Company Debtors, brought an adversary proceeding (the "Adversary Proceeding") in the U.S. Bankruptcy Court for the Northern District of Illinois (the "Bankruptcy Court") seeking the avoidance and recovery of alleged preferential transfers to Lone Star RV Sales, Inc. (the "Defendant"). The Defendant now moves pursuant to 28 U.S.C. § 157(d) to withdraw the reference of the Adversary Proceeding from the Bankruptcy Court to this Court. (D.E.1 (the "Motion").) As explained below, numerous reasons dictate that it would be imprudent to withdraw the reference in this core bankruptcy matter at the present time. Accordingly, the Motion is denied without prejudice.

## I. Background

On December 17, 2002 (the "Petition Date"), Conseco Finance Corp. and Conseco Finance Servicing Corp. filed for protection under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court. After the Petition Date, additional subsidiaries filed petitions for relief under Chapter 11 of the Bankruptcy Code. On September 9, 2003, the Bankruptcy Court entered an order confirming the Finance Company Debtors' Sixth Amended Joint Liquidating Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code (the "Plan"); the Plan became effective on September 15, 2003.

Pursuant to the Plan, the Plan Administrator was appointed for the purpose of overseeing the liquidation and administration of certain of the estate assets. According to the Plan, any and all avoidance actions were assigned to the CFC Estate. The Plan Administrator is authorized to pursue such actions for the benefit of the CFC Estate and therefore for the benefit of the affected creditor constituencies.

On November 15, 2003, the Bankruptcy Court entered an order approving optional pretrial mediation procedures from which all preference defendants had the opportunity to opt out. The CFC Estate has settled approximately 150 of the preference actions. Over 150 such actions remain, with the majority of such cases (including the Adversary Proceeding) scheduled for mediation within the next two months. (Defendant did not opt out of the mediation process.) The Bankruptcy Court has been tending to pre-trial matters for the various preference actions in a uniform fashion which appears to maximize the chances for equal treatment of the cases.

The Plan Administrator commenced the instant Adversary Proceeding in the Bankruptcy Court against the Defendant. In the Adversary Proceeding, the Plan Administrator has brought

three claims, pursuant to 11 U.S.C. §§ 547(b) and 550, seeking the avoidance and recovery of allegedly preferential transfers to the Defendant. With respect to the allegedly preferential transfers, the Plan Administrator maintains that during the 90-day period immediately preceding the Petition Date, one or more of the Finance Company Debtors made payments (the "Payments") totaling $81,642.06 to the Defendant. (*Id.*, Ex. A. ¶ 11.) The Defendant admits that the Payments were made, but denies that such Payments were preferential transfers. (*Id.*)

## II. Analysis

Section 157(d) of the United States Code empowers a district court to withdraw a proceeding from the bankruptcy court on its own motion or on timely motion of any party, and to have the proceeding heard in the district court if there is "cause shown" for the removal. 28 U.S.C. § 157(d). This portion of section 157(d) provides for what is known as "permissive withdrawal,"[1] and it reflects "a presumption that Congress intended to have bankruptcy proceedings adjudicated in the bankruptcy court unless rebutted by a contravening policy." *Allard v. Benjamin (In re DeLorean Motor Co.)*, 49 B.R. 900, 911-12 (Bankr. E.D. Mich. 1985).

The Bankruptcy Code does not define "cause shown." Moreover, "nothing in the legislation or otherwise indicates what may constitute cause." Lawrence P. King, *Symposium on Bankruptcy: Jurisdiction and Procedure under the Bankruptcy Amendments of 1984*, 38 Vand. L. Rev. 675, 696 (1985). In *Holland Am. Ins. Co. v. Roy*, one of the seminal and first cases analyzing § 157(d), the Fifth Circuit observed that "cause" is not a meaningless term, and thus a district court's decision to hear a case "which will adjudicate the rights of the debtors and its

---

[1] This proceeding is not subject to mandatory withdrawal since its resolution will not require "significant interpretation" of non-bankruptcy federal laws. 28 U.S.C. § 157(d).

3

creditors . . . must be based on a sound, articulated foundation." 777 F.2d 992, 998 (5th Cir. 1985). The Fifth Circuit further instructed that

> considerations of judicial economy also bear on the decision to withdraw the reference or refer to the bankruptcy court. The district court should consider the goals of promoting uniformity in bankruptcy administration, reducing forum shopping and confusion, fostering the economical use of the debtors' and creditors' resources, and expediting the bankruptcy process.

*Id.* at 999. But, whether the claim is core or non-core is the "most important" factor, *In re Burger Boys, Inc.*, 94 F.3d 755, 762 (2d Cir. 1996), and a "district court considering whether to withdraw the reference should first evaluate whether the claim is core or non-core, since it is upon this issue that questions of efficiency and uniformity will turn." *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993).

Core proceedings are those that "directly pertain to the administration of the debtor-creditor relationship." *Am. Comm. Serv., Inc. v. Wright Mktg., Inc. (In re Am. Comm. Serv., Inc.)*, 86 B.R. 681, 684 (D. Utah 1988) (citing *Northern Pipe Line Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 71 (1982)). In a core proceeding, the bankruptcy judge renders the final decision, subject to appeal to the district court. 28 U.S.C. § 157(b)(1), (c)(2). In contrast, non-core proceedings are typically state common law actions which may relate only peripherally to the bankruptcy case. *See, e.g., Stallings v. Kellog (In re Hudson Oil Co.)*, 68 B.R. 735 (Bankr. D. Kan. 1986). Accordingly, in non-core proceedings, a bankruptcy judge merely makes recommendations that are subject to *de novo* review in the district court. 28 U.S.C. § 157(c)(1).

Given that bankruptcy courts can adjudicate core matters to final binding judgment and that such cases often involve facts with which the bankruptcy court is already familiar as well as legal issues within the bankruptcy court's expertise, precedent teaches that hearing core matters

4

in a district court raises a material risk of the "inefficient allocation of judicial resources." *In re Orion*, 4 F.3d at 1101. In contrast, the fact that a proceeding is non-core implicates the weighty considerations of judicial economy and an expedient bankruptcy process articulated by the Fifth Circuit in *Holland*. Indeed, in some cases, withdrawing the reference for non-core matters avoids unnecessary duplication of judicial effort.[2]

Here, the Defendant admits that the preferential transfer claims contained in the Adversary Proceeding are core bankruptcy issues. (D.E. 1, Ex. A. ¶ 2.) Indeed, section 157(b)(2) sets forth a nonexclusive list of core proceedings, and it explicitly includes "proceedings to determine, avoid, or recover preferences." 28 U.S.C. § 157(b)(2)(F). As explained above, the fact that the Adversary Proceeding is a core proceeding cuts strongly against permissive withdrawal, at least at this juncture. Nonetheless, the fact that the claims alleged in the Adversary Proceeding are core is not dispositive of the withdrawal analysis. *Accord In re Houbigant, Inc.*, 185 B.R. 680, 686 (S.D.N.Y. 1995).

The Court finds that the other considerations identified by precedent also militate against permissive withdrawal. With respect to judicial economy and uniformity, the Bankruptcy Court has presided over this case for three years. The Bankruptcy Court is presiding in a uniform manner over some 150 preference suits, thus promoting consistency of pretrial rulings. Furthermore, the Bankruptcy Court has instituted an optional mediation program, which appears to have facilitated the settlement of over 150 other preference actions in addition to the

---

[2] Notably, the fact that a proceeding is non-core, by itself, does not establish "cause" to withdraw; many courts require additional circumstances to justify withdrawal of the reference. *See, e.g., Hatzel & Buehler, Inc. v. Cent. Hudson Gas & Elec. Corp.*, 106 B.R. 367, 370 (D. Del. 1989).

approximately 150 that remain, and the overwhelming majority of the remaining cases are scheduled for mediation in the next two months.[3] There is no doubt that the Bankruptcy Court is in the best position to monitor the progress of this litigation and ensure a uniform, efficient administration of the bankruptcy estate and the various preference actions in dispute. *See, e.g., Bus. Comm., Inc. v. Freeman*, 129 B.R. 165, 166 (N.D. Ill. 1991).

The Defendant's Motion also raises concerns identified in precedent of manipulation and "forum shopping," at least at this stage of the proceedings, in that the Defendant is seeking to displace itself from the uniform pretrial administration process that is already in place and that appears to be functioning smoothly and efficiently. *See, e.g., Holland*, 777 F.2d at 999 (discussing concerns of reducing forum shopping, promoting uniformity, and fostering the economical use of the debtors' and creditors' resources); *accord, e.g., Colliers on Bankruptcy* ¶ 3.04 (15th ed. rev.). A principal goal of any proceeding involving a bankrupt estate and its creditors is that there be an efficient use of the debtors and creditors' resources in efforts to administer the debtors' estate and resolve any related litigation. *See, e.g., In re Orion*, 4 F.3d at 1101 (collecting cases). The Bankruptcy Court is promoting that goal through, *inter alia*, its uniform pretrial rulings and management. To the extent the Defendant cleaves itself from that process, it raises the costs for the CFC Estate just to litigate pretrial issues that may well be independent of the merits of the case; these costs predictably may skew the substance of settlement discussions in a way that has no relation to the substance of the dispute. As discussed, precedent recognizes this risk of manipulation and forum shopping, and the Defendant has

---

[3] The Defendant is scheduled to participate in this non-binding mediation program; Defendant appears to have been given an opportunity to opt out but declined to do so.

offered no justification for destroying the pretrial efficiencies for all parties that are being afforded by the Bankruptcy Court's pretrial management of this and 150 other preference actions. *Cf.* 28 U.S.C. § 1407 (providing for coordinated pretrial proceedings in a single transferee district court in multi-district litigation (MDL) cases, with any remaining trials to occur in the respective transferor fora). For all of these reasons, the Court finds that withdrawing the Adversary Proceeding from the Bankruptcy Court at this time would be an inefficient use of judicial resources.

The Defendant contends that because it will seek a jury trial, but has not consented to a jury trial in the Bankruptcy Court, the Adversary Proceeding inevitably will be adjudicated in this Court and therefore the case should be withdrawn from the Bankruptcy Court now. (D.E. 1 at ¶ 12 -14.) The fact that the Defendant may well have a right to jury trial, if such a trial eventuates, is not determinative. To be sure, "a district court is not compelled to withdraw a reference simply because a party is entitled to a jury trial." *Enron Power Mktg. v. City of Santa Clara (In re Enron Power Mktg.)*, No. 01 Civ. 7964, 2003 WL 68036, at *6 (S.D.N.Y. Jan. 8, 2003).[4] As the district court stated in *In re Kenai Corp.*:

---

[4] To the extent the Defendant relies on *NDEP Corp. v. Handl-It, Inc. (In re NDEP Corp.)*, 203 B.R. 905 (D. Del. 1996) and *Maxwell v. Leavelaw.Com, Inc. (In re Marchfirst, Inc.)*, No. 03 C 4043, 2003 WL 22244982 (N.D. Ill. Sept. 22, 2003), such reliance is misplaced. The *NDEP* court's decision to withdraw the reference in light of the defendant's jury demand was explicitly based on the fact that the case, unlike the case *sub judice*, involved a non-core matter. 203 B.R. at 908. Indeed, the court stated that an "initial determination should be whether the claim is a core bankruptcy proceeding or whether it is non-core." *Id.* at 908. Likewise, in *Marchfirst*, unlike the Plan Administrator here, the plaintiff conceded (and conceded wrongly, at least as to timing) that the defendant's motion to withdraw should be granted if the defendant is entitled to a jury trial. 2003 WL 22244982 at *1. What is more, there is no evidence that the bankruptcy court in *Marchfirst* established any of the pretrial procedures promoting judicial economy and uniformity established by the Bankruptcy Court in this case.

> A rule that would require a district court to withdraw a reference simply because a party is entitled to a jury trial, regardless of how far along toward trial a case may be, runs counter to the policy favoring judicial economy that underlies the statutory scheme governing the relationship between the district courts and bankruptcy courts. Although withdrawal is an important component of this scheme, the court must employ it judiciously in order to prevent it from becoming just another litigation tactic for parties eager to find a way out of bankruptcy court.

136 B.R. 59, 61 (S.D.N.Y. 1992); *accord, e.g., In re Enron Power Mktg.*, 2003 WL 68036, at *7 (collecting cases). Courts also have recognized that the interests of judicial economy and efficiency are served by keeping an action in Bankruptcy Court for the resolution of pre-trial, managerial matters, even if the action will ultimately be transferred to a district court for jury trial. *In re Kenai Corp.*, 136 B.R. 59, 61 (S.D.N.Y. 1992); *accord, e.g., Bus. Comm.*, 129 B.R. at 166); *Stein v. Miller*, 158 B.R. 876, 880 (S.D. Fla. 1993).

Here, the Adversary Proceeding is in its preliminary stage. Dispositive motions might resolve the matter. Moreover, there is potential for discovery requiring court oversight, and the Bankruptcy Court will continue to preside over numerous other avoidance actions that will be decided on many of the same factual and legal grounds. Since all of these factors militate against withdrawing the reference, the fact that the Defendant might ultimately request a jury trial in federal district court is not dispositive. Furthermore, the Court's ability to withdraw the reference at some later juncture should alleviate the Defendant's concern with respect to obtaining a jury trial if one occurs. *See, e.g., Harve Benard Ltd. v. Rothschild*, No. 02 Civ. 4033, 2003 WL 367859, at *6 n.9 (S.D.N.Y. Feb. 19, 2003). If and when this core bankruptcy matter is actually going to be tried, and if the Defendant chooses not to have a jury trial in the Bankruptcy Court, the Defendant of course is free to renew its motion to withdraw the reference. For now, however, considerable interests in this case militate against withdrawal.

### III. Conclusion

Because the issues implicated in the Adversary Proceeding are core bankruptcy issues and because the other factors concerning judicial efficiency and uniformity support a decision to keep the action in the Bankruptcy Court, the Defendant's motion to withdraw the reference is denied without prejudice.

So ordered.

_____
Mark Filip
United States District Judge
Northern District of Illinois

Dated: May 9, 2005